727 So.2d 1143 (1999)
INDIAN RIVER COLONY CLUB, INC., Appellant,
v.
John L. BAGG and Olga Bagg, husband and wife, Appellees.
No. 98-921.
District Court of Appeal of Florida, Fifth District.
March 19, 1999.
Allan P. Whitehead of Mosely, Wallis & Whitehead, Melbourne, for Appellant.
T.M. Barlow of Barlow & Bohne, Melbourne, for Appellees.
*1144 PETERSON, J.
Indian River Colony Club, Inc. ("Indian River") appeals a final judgment declaring certain fixed price buy back provisions to be unlawful restraints against the alienation of property. We reverse.
Indian River was founded as a non-profit organization in 1986 for the purpose of providing benefits to persons who have served in the military as commissioned or chief warrant officers. Indian River attempts to extend benefits to current and former military officers similar to those that they enjoyed (or presently enjoy) in the military, with the members funding those benefits. The membership numbers approximately 900, the majority of which represents retired military officers.
Indian River also developed a planned unit residential development of approximately 700 single-family residences. An officer can be a member of the club without owning property, but to own property, the officer must be a member.
Property owners, in exchange for a monthly fee, are entitled to benefits not typical of most single-family subdivisions, including the following:
All exterior maintenance, including roofs, landscaping and repairs are provided by the club.
Appliances, air conditioning, irrigation and other mechanical systems in the individual residences [are maintained by the club].
When a member opts to sell their residence, the club refurbishes the residence, markets the property and handles all aspects of transferring the title.
The residents are also subject to other deed restrictions which are recorded in the public records. Paragraph 9 of the Deed of Restrictions requires that each purchaser be a member of Indian River and that purchase contracts provide an agreed-to purchase price upon resale. Paragraph 9 also states that the member "shall" transfer the residence to a purchaser designated by Indian River from a waiting list. If there is no one on the waiting list or the person on the waiting list declines, Indian River is obligated to purchase the property within 60 days at the agreed repurchase price.
The Baggs purchased their property in 1988, for $115,107. In their contract for purchase they agreed to a specific repurchase price and to be bound by the deed restrictions. In 1997, the Baggs decided to sell their property. Under the terms of their agreement with Indian River, the repurchase price would be $112,277 plus $7,400 for improvements that the Baggs made during the time they held the property. Unhappy with that price, the Baggs filed a declaratory action when Indian River advised them that it would enforce the repurchase agreement.
The trial court granted the Baggs' motion for summary judgment finding that paragraphs III and XIII of the Baggs' original contract were invalid and unenforceable. Paragraph III and XIII contain sales restrictions that are also contained in Paragraph 9 of the Deed of Restrictions. Indian River asserts the trial court erred in finding the restrictions to be unlawful restraints on alienability.
Paragraph 9, entitled "Transfer of Property", provides:
In recognition of the requirement that a purchaser of a residence in the Subdivision shall be a member of the INDIAN RIVER COLONY CLUB, INC. and that the purchase agreement provided that the purchaser will be repaid an agreed purchase price when the purchaser (or his estate) decides to transfer his title to the residence, the purchaser shall transfer the residence to a purchaser designated by the INDIAN RIVER COLONY CLUB, INC., as the next member on the priority list of members of the club who is waiting for a vacancy. If there is no one on the priority list, or if the persons on the priority list decline to purchase the residence, the INDIAN RIVER COLONY CLUB, INC., shall repurchase the residence at the agreed repurchase price within sixty (60) days after the Club determines that there is no eligible member who desires to purchase the residence. (emphasis added)
The Amended Deed of Restrictions also provides:

*1145 2. MUTUALITY OF BENEFITS AND OBLIGATION

The restrictions and agreements set forth herein are made for the mutual and reciprocal benefit of each and every residential lot and apartment in the Subdivision and are intended to create a privity of contract in this state between the respective owners of all of said lots and apartments; to create a privity of contract and estate between the grantees of said lots and apartments, their heirs, successors or assigns and shall, as to the owner of each such lot or apartment, his heirs, successors or assigns, operate as covenants running with the land for the benefit of each and all other lots and apartments in the Subdivision and their respective owners. (Emphasis added).
Paragraph XIII of the contract provides: REPURCHASE BY SELLER: In further consideration for the sale of this property and in recognition that future purchases of this residence must be members of the INDIAN RIVER COLONY CLUB, INC. Buyer hereby agrees that when the Buyer (his heirs or assigns) decides to transfer title to this residence Buyer (his heirs or assigns) shall transfer this residence to the purchaser designated by the INDIAN RIVER COLONY CLUB, INC. as the next member of the Club who is waiting for a residence, or if there is no one on the priority list willing to purchase the residence, Buyer agrees to transfer title to the residence to the INDIAN RIVER COLONY CLUB, INC. as provided in the Deed Restrictions referred to in paragraph X of this contract, the price to be received by Buyer (his heirs or assigns) being the agreed repurchase price set out in paragraph III of this contract. (Emphasis added).
The appellees assert that under Iglehart v. Phillips, 383 So.2d 610 (Fla.1980), the trial court properly concluded that the repurchase provisions are void and unenforceable. In Iglehart, 306 acres of land was conveyed for a nominal consideration of $10 when the land was worth $200 per acre. The land, however, was subject to an option in favor of the seller to repurchase the land for the same price plus the cost of improvements within 60 days after the buyer gave notice that he wished to sell the land. Failure to exercise the option within the 60 days voided the option. The buyer's son eventually acquired the property by gift. When he later wanted to sell it, he sought declaratory relief regarding the restrictions. The case reached the Florida Supreme Court where that court declared:
Although the law is clear that a repurchase option at market or appraised value for unlimited duration is not an unreasonable restraint, the situation changes substantially when the price is fixed in the option. It is the generally accepted rule that a fixed price repurchase option of unlimited duration, independent of the lease, is an unreasonable restraint.
Iglehart at 615.
Here we have a case in which the Club has no option; it is required to purchase the Baggs' property for a predetermined price whether the value increases or decreases and at any time that the Baggs or their heirs elect. We believe that a significant difference exists from Iglehart and its progeny[1] in that the Baggs can enforce the Club's obligation to purchase even in a declining market. We also find as a significant difference in the instant controversy the fact that the club's re-purchase provision is a part of a unified set of deed restrictions and covenants designed to promote the community welfare of the residential property owners of the subdivision.
In Iglehart, the lower court found as significant, in posing its certified question to the supreme court, that no purpose for the repurchase option was set forth in the deed. Iglehart at 613, n. 2. Underlying the supreme court's determination in Iglehart that the fixed price re-purchase option of unlimited duration was an unreasonable restraint on *1146 the free alienation of the property was the conclusion that this limiting condition, for which no purpose was set forth, excessively impacted the long term improvement prospects and general marketability of the property. Id. at 613. In the instant case, the covenants indicate that a valid purpose exists for a property owner and club member in the Indian River Colony Club subdivision to abandon the right to sell a home in the future at a market price. The restriction is intended to promote the community welfare of all the owners of the subdivision and to provide "for the mutual and reciprocal benefit of each and every residential lot and apartment in the subdivision." We do not believe that the restriction in this case has illegally or adversely affected either the improvement prospects or the general marketability of properties within the subdivision. The contrary situation exists: eligible officers are on a waiting list to get into this popular and reasonably affordable development.
We take the liberty of speculating that in the course of repurchasing some of the 700 units over a period of years, refurbishing them for resale and incurring costs of marketing and transferring title, that in some cases Indian River will not realize a profit. Indian River must have funds to absorb losses and can obtain those funds either through profits from resales or assessments against its members. That reality as well as the Baggs' own insulation from profit or loss was implicit in the Baggs' contract when they purchased in this exclusive club and was critical in maintaining the original objectives of the founders and members. Additionally, in declaring the restrictions invalid and unenforceable, it would appear that the Baggs would be entitled to sell to whomever they wish, whether the person was a military officer or not, thus further defeating an intention of the founders and the understanding of current members of Indian River.
There is no assertion that the Baggs were unduly influenced or coerced in any way to purchase their home in this exclusive community. In short, we see no reason why the courts should interfere with the original bargain between Indian River and the Baggs.
We reverse the final judgment.
REVERSED.
W. SHARP, J., concurs.
THOMPSON, J., dissents, with opinion.
THOMPSON, J., dissenting.
I respectfully dissent. I would find the restrictions and covenants to be unlawful restraints on alienation.
Whether called a guaranteed buy-back provision or an option or right of first refusal, the provisions of the contract resulted in an unlawful and unreasonable restraint on the alienation of real estate. Regardless of the terminology, the effect of the provision is that the Baggs cannot sell the property for its appreciated value to purchasers they select and who are otherwise qualified to close on the property. The Club argues that the provision is a guarantee and therefore should be viewed differently. I disagree. A similar question was answered in Colen v. Patterson, 436 So.2d 182 (Fla. 2d DCA), rev. denied, 438 So.2d 831 (1983), that Colen held that whether an agreement is labeled an option or a right of first refusal is not relevant. What is relevant is whether the agreement was of indefinite duration and contained a fixed price for repurchase. In this case, the contract is for a fixed price of $112,277 plus the value of improvements, for an indefinite duration. It requires that the buyer and his heirs or assigns comply with all of the repurchase requirements. Thus, it is binding upon the Baggs' heirs, successors and assigns, and creates covenants which are of unlimited duration as a matter of law. Fallschase Development Corp. v. Blakey, 696 So.2d 833 (Fla. 1st DCA 1997).
This case is squarely controlled by Iglehart v. Phillips, 383 So.2d 610 (Fla.1980). In Iglehart, the supreme court considered an option which was essentially a right of first refusal, for the repurchase of property which continued for an unlimited period of time and which established a fixed repurchase price. The repurchase price was established as the price paid for the land plus the cost of improvement. In this case, the contract requires a final repurchase price for an unlimited duration. There was nothing in the contract *1147 that included any sum for the increase in the value of the property from the time of purchase to the time of sale. Further, the Club can prohibit the sale of the property unless it gives prior approval of the purchaser. All of these factors were considered by the Florida Supreme Court and found unenforceable because they interfered with alienability of the property. Iglehart, at 615, 616.
The Club does raise issues about equity: it has maintained the Baggs' property and some of the expenses may not be covered by the Baggs' monthly maintenance fee, which means that the Club did not get the benefit of its bargain with the Baggs when they sold the property. The remedy is to remand the case to the trial court to conduct an evidentiary hearing and then decide the relief to be granted the parties. Iglehart at 617.
For these reasons, I dissent.
NOTES
[1] While Colen v. Patterson, 436 So.2d 182 (Fla. 2d DCA), rev. denied, 438 So.2d 831 (Fla.1983), like Iglehart itself, involved a right of first refusal rather than an option per se, the guarantee buy-back provision in this case is neither an option contract nor a contract providing for a right of first refusal.